# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TODD BONDS, | : |
|       Plaintiff, | :   Case No. 2:20-CV-5367 |
| v. | :   Chief Judge Algenon L. Marbley |
| | :   Magistrate Judge Elizabeth P. Deavers |
| BERNE UNION LOCAL SCHOOLS, *et al.*, | : |
|       Defendants. | : |

## OPINION & ORDER

This matter comes before the Court on Magistrate Judge Deavers' February 8, 2021 Report and Recommendation. (ECF No. 5). The Magistrate recommends that this Court dismiss Plaintiff's action against Defendants Fairfield County Jobs and Family Services ("JFS"), Superintendent John Parker, Principal Craig Heath, and Berne Union Local Schools ("BULS") under 28 U.S.C. § 1915(e)(2) for failure to state a claim, while allowing Plaintiff to proceed with his suit against Leah Armstrong, Athletic Director Daniel Snively, and Melissa Persinger-Brown in their personal capacities. (*Id.*). Only Defendant Daniel Snivley filed an Objection to this Report and Recommendation. (ECF No. 6). For the following reasons, this Court **ADOPTS IN PART** and **MODIFIES IN PART** the Magistrate Judge's Report and Recommendation. Defendant Snivley's Objection is **SUSTAINED IN PART** and **OVERRULED IN PART**. The claims against Defendant Snively are **DISMISSED WITHOUT PREJUDICE.**

1

## I. BACKGROUND

### A. Factual Background

Mr. Bonds has initiated a suit in federal court stemming, in relevant part, from a school district official denying him access to a football game in which his son was playing. More broadly, the Plaintiff raises several allegations related to custody of his fifteen-year-old son, but this Court will solely focus on the allegations against Mr. Snively, as he is the only Defendant who raised an objection to the Magistrate's Report and Recommendation. Mr. Bonds alleges that on August 28, 2020, he drove two-and-a-half hours to Sugar Grove, Ohio to watch his son play in a high school football game. (*Id.* ¶ 22). When he arrived, several men in Berne Union attire permitted him to enter the venue to say hello to his son. (*Id.*). Plaintiff returned to the food stand, where one of the men handed him a cup containing what appeared to be Kool-aid. (*Id.* ¶ 23). A man who had previously informed Plaintiff that he worked in the football press box told Plaintiff he would like the beverage, which turned out to contain alcohol. (*Id.* ¶¶ 24–25). Mr. Bonds alleges that, before he took a sip, a school resource officer in full uniform gave him an approving nod. (*Id.*). When the game began, Plaintiff stood in the stands to watch the game. (*Id.* ¶ 26). Feeling like he was being watched by the school resource officer, he moved around the stadium several times. (*Id.*). When the game ended, Mr. Bonds saw his son, who hugged him, before the two spoke and took a photo together. (*Id.* ¶ 27).

The following week, Mr. Bonds made the drive again to see his son play on September 4, 2020. (*Id.* ¶ 28). Mr. Bonds alleges that Berne Union had been intentionally withholding his son's report card from him. (*Id.* ¶ 29). When he arrived, he asked a white woman with blonde hair about the admission cost. (*Id.* ¶ 30). This woman told Mr. Bonds he would need a voucher to enter. (*Id.*). Plaintiff then asked to speak to Principal Heath, who could not be reached at the time. (*Id.*). He

stepped away to send an e-mail to Principal Health, then returned to the entrance, at which point the woman retrieved Athletic Director Snively. (*Id.* ¶¶ 30–31). In his Complaint, Plaintiff identifies Mr. Snively as a white supremacist with ties to white supremacist groups. (*Id.* ¶ 7). Defendant Snively, in a "loud and aggressive tone," asked if Mr. Bonds was related to his son in front of a group of 25 other attendees. (*Id.* ¶ 31). When Plaintiff responded in the affirmative, Defendant Snively told the Plaintiff that his son had asked Snively to prevent him from entering the game. (*Id.*). Mr. Bonds questioned Mr. Snively's statement, as he and his son had discussed eating Subway together at the game. (*Id.*). Mr. Snively continued to refuse him entry, informing Mr. Bonds that he needed a voucher in order to enter. (*Id.* ¶¶ 33–34). Mr. Bonds told Mr. Snively, now flanked by a uniformed police officer, that he was unaware of the voucher policy. (*Id.* ¶ 34). Mr. Bonds alleges that the denial of entry to the football game was part of a conspiracy to deny him his custodial rights and right to attend the public event. (*Id.* ¶ 33–34). Mr. Bonds alleges that Mr. Snively was "adamant" about denying the Plaintiff his rights because of his "white supremacist ties." (*Id.* ¶ 35).

Mr. Bonds and the District Superintendent had a phone call on September 15, 2020, after Mr. Bonds had e-mailed the Superintendent about the September 4, 2020 incident. (*Id.* ¶ 37). During this phone call, the Superintendent told Mr. Bonds that Mr. Snively had been in trainings about "dealing with split families," as such training was required in the District. (*Id.*). The Superintendent also informed Mr. Bonds that Mr. Snively had breached district protocol by denying Mr. Bonds entry without "reach[ing] further up the ladder," which Mr. Bonds asserts is an admission of wrongdoing. (*Id.* ¶ 38).

## B. Procedural Background

On October 12, 2020, Plaintiff, proceeding *pro se*, filed a complaint against BULS, Craig Heath, Daniel Snively, John Parker, JFS, Leah Armstrong, and Melissa Persinger-Brown that they engaged in discrimination and retaliation against him in violation of his civil rights. (ECF No. 4). In his Complaint, Mr. Bonds brings claims of discrimination, retaliation, civil conspiracy, and intentional interference with custody against Mr. Snively. As to the discrimination claim, Mr. Bonds asserts that Mr. Snively "intentionally embarrassed Plaintiff and denied him entrance to a football game" because of his son's statement, which had been coached by his mother. (*Id.* ¶ 61). As to his retaliation claim, Mr. Bonds asserts that the denial of access by Mr. Snively "would 'chill' a normal person because a normal person doesn't want police involvement while on the grounds of a school." (*Id.* ¶ 70). He asserts that this was in response to his attempts to participate in his child's life. (*Id.* ¶ 71). As to the conspiracy claim, Mr. Bonds alleges that Mr. Snively worked in concert with other defendants to "deprive Plaintiff [of] his civil rights and his rights as father." (*Id.* ¶ 73). Specifically, Mr. Snively "used the District's power and influence" to deny Plaintiff his rights by denying him entrance to the football game. (*Id.* ¶ 74). Plaintiff does not mention Mr. Snively by name or reference in the intentional interference section of his complaint. (*Id.* ¶¶ 76–80).

After screening the complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), Chief Magistrate Judge Deavers recommended that the Court dismiss the action as to Defendants JFS, BULS, Parker, and Heath, but allow the action to proceed against Defendants Armstrong, Snively, and Persinger-Brown in their personal capacities. (ECF No. 5). The Report and Recommendation advised that dismissal of JFS was proper under the Eleventh Amendment. (*Id.* at 6). It also advises dismissal of BULS because school districts cannot be sued under Ohio law; rather, the board of

education is the proper party in a lawsuit. (*Id.* at 7). No objection was raised to these portions of the Report and Recommendation and they are ADOPTED. The Complaint is DISMISSED against Defendants JFS and BULS. Plaintiff may AMEND his Complaint within fourteen days of this Opinion and Order to the limited extent he wishes to assert claims against the Board of Education.

The Report and Recommendation also discussed the claims against the individual Defendants. The Report and Recommendation advised that Defendants Parker and Heath be dismissed from this action as Plaintiff has set forth no allegations that they personally participated in any of the underlying conduct at issue and *respondeat superior* liability is not actionable under Section 1983. (*Id.* at 9). The Magistrate also recommended that the action be permitted to proceed against Defendants Armstrong, Snively, and Persinger-Brown. As no objections have been made as to the Report and Recommendation's conclusions as to Defendants Armstrong, Parker, Heath, and Persinger-Brown, this Court ADOPTS those sections of the Report and Recommendation. The Complaint is DISMISSED against Defendants Parker and Heath.

Defendant Snively, however, filed an objection to the Report and Recommendation on February 22, 2021. (ECF No. 6). The objection seeks dismissal of the Complaint against him on the grounds that Plaintiff has not adequately pled the claims against Mr. Snively. (*Id*. at 6–9). Mr. Snively asserts that the Magistrate's recommendation is "clearly erroneous and contrary to law" and should not be adopted with respect to its discussion of the claims against him. (*Id.* at 1). Mr. Bonds filed a reply to the objection on March 10, 2021, more than two weeks after Mr. Snively's objection. (ECF No. 7). This response is untimely under Federal Rule of Civil Procedure 72(b) and the parties were informed in the Report and Recommendation of the necessary timeframes for filing objections and responses.

## II. STANDARD OF REVIEW

A party's objection to a magistrate judge's report and recommendation is reviewed *de novo* by the district court. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). When a party timely objects to the Report and Recommendation on a dispositive matter, the district judge must review *de novo* any part of the Magistrate Judge's disposition against which objections have been properly raised. *Id*. The district judge is not required to review every detail of the objection. Rather, the judge need only review specific objections. *See Johnson v. Tamborski*, No. 2:19-cv-04114, 2020 U.S. Dist. LEXIS 97318, at *3 (S.D. Ohio June 3, 2020). After this review, the district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *McKinney v. Kasich*, No. 2:15-cv-2043, 2016 U.S. Dist. LEXIS 39519, at *6 (S.D. Ohio Mar. 25, 2016). Here, Mr. Snively filed his objection within fourteen (14) days in accordance with Fed. R. Civ. P. 72(b).

Plaintiff is a *pro se* litigant, and his claims must be screened under 28 U.S.C. §1915(e)(2) to determine whether any of his claims are cognizable before the case can proceed. Section 1915(e)(2)(B) requires courts to dismiss any action that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." To state a claim upon which relief may be granted, a plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While a detailed account of the facts is not required, a plaintiff must present more than a cursory recitation of the elements of the cause of action that he alleges. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because *pro se* litigants are held to "less stringent standards," their complaints should be "liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

### III. LAW & ANALYSIS

Defendant Snively objected to the Magistrate Judge's Report and Recommendation that all claims be allowed to proceed against him. (ECF No. 6). He requests that this court dismiss Plaintiff's Complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### A. Discrimination

Section 1983 imposes liability upon a person who, acting under the color of law, subjects another person to a deprivation of federal rights. 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Williams v. Mohr*, No. 2:17-cv-01000, 2018 WL 3984705, at *3 (S.D. Ohio Aug. 21, 2018) (quoting *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001)). A § 1983 claim may not be invoked to redress violations of Title VII. *Pinelo v. N. Ky. Univ.*, No. 96-5765, 1998 U.S. App. LEXIS 6660, at *6 (6th Cir. Mar. 31, 1998). Instead, to state a claim, a plaintiff must point to an independent right derived from a constitutional source. *Id*. Mr. Snively argues that Mr. Bonds has not pled the necessary facts to plead an equal protection claim.

Construing Plaintiff's complaint liberally, this Court assumes Mr. Bonds means to pursue an equal protection claim. The Equal Protection Clause "safeguards against the disparate treatment of similarly situated individuals as a result of government action that 'either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 364, 379 (6th Cir. 2011)). An equal protection claim can also be premised on a "class-of-one" theory under which plaintiffs must allege that, due to animus, they were treated differently than similarly situated individuals. *See Benalcazar v. Genoa Twp.*, No. 2:18-cv-01805, 2020 WL 4933797, at *4

(S.D. Ohio Aug. 24, 2020) (citing *Paterek*, 801 F.3d at 649–50). To withstand a motion to dismiss, the Plaintiffs must allege either "(1) disparate treatment from similarly situated individuals with no rational basis for the difference, or (2) that the challenged conduct was motivated by animus or ill-will." *Id.* (citing *Paterek*, 801 F.3d at 650). Plaintiff has alleged that Mr. Snively was "adamant" about denying the Plaintiff his rights because of his "white supremacist ties." (*Id.* ¶ 35). At the motion to dismiss stage, this is a sufficient allegation that the challenged conduct was motivated by animus or ill-will to proceed under a "class-of-one" theory.

Likewise, Mr. Bonds has adequately alleged that Mr. Snively deprived him of a fundamental right. The Sixth Circuit has held that "[i]t is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000); *see also Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)) ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law."). This includes "the right 'to direct the upbringing and education of children under their control.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)); *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (acknowledging a parent's plain interest "in the companionship, care, custody, and management of his or her children"). Mr. Bonds alleges that he has custody rights to his child and, as a parent with legal rights, he sought to attend a public sporting event in which his child was participating. Mr. Snively's decision to deny Mr. Bonds entry, allegedly animated by Mr. Bonds' race, interferes with Mr. Bonds' relationship with his child. In the absence of any family court orders to the contrary, the right to rear one's children as one sees fit may include the decision to attend a sporting event, even against a child's wishes.

8

At least for the purposes of surviving a motion to dismiss, Mr. Bonds has adequately alleged that his fundamental right to parent his child has been abridged.

Because Mr. Bonds has adequately pled a race discrimination claim against Mr. Snively, this Court **OVERRULES** Mr. Snively's objection and this claim may proceed against him.

### B. Retaliation

Mr. Bonds also asserts a claim for retaliation against Mr. Snively. Under the First Amendment, plaintiffs may bring a claim for retaliation when they suffer an adverse consequence for engaging in protected conduct. To state a claim, a plaintiff must allege: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action. *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Whether an activity is protected, or an action is adverse, depends on the context. *Id.* (citing *Thaddeus-X*, 175 F.3d at 388). Mr. Snively again challenges the adequacy of the complaint's allegations concerning retaliation.

Plaintiff has alleged that he previously requested his child's report cards and has never received them on time. (ECF No. 4 ¶ 67). Mr. Bonds has attached an e-mail showing he had requested a third quarter report card. (ECF No. 4 at 24). This e-mail also shows a response from Principal Heath that no one received third quarter grades because of COVID-19. (*Id.*). He further alleges that he has requested that the school treat him like a similarly situated white man. (ECF No. 4 ¶ 68). Mr. Bonds asserts that the denial of access was an adverse action because it "would 'chill' a normal person because a normal person doesn't want police involvement while on the grounds of a school." (*Id.* ¶ 70). Construing his Complaint liberally, Plaintiff alleges that he engaged in protected conduct by seeking information about his child's education. *See, e.g.*, *Wenk*

9

*v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015) (noting that it was uncontested that a parent's advocacy about their child's educational plan is protected activity). This Court need not determine whether this is protected First Amendment activity because Mr. Bonds has not alleged a casual connection between his request and the purported adverse action taken by Mr. Snively. Mr. Bonds has not alleged that Mr. Snively knew of the requests for the report card; rather, he alleges that Mr. Snively denied him entry to the game because of racial animus. At this juncture, Mr. Bonds has not alleged a retaliation claim. This Court **SUSTAINS** Mr. Snively's objection, but this Court's dismissal is **WITHOUT PREJUDICE**.

### C. Conspiracy

Mr. Bonds also brings a civil conspiracy claim against Mr. Snively. Mr. Bonds makes reference to a civil conspiracy "statute," so this Court will presume he is proceeding under 42 U.S.C. § 1985. Section 1985 prohibits three types of conspiracies. Subsection (1) of § 1985 relates to a conspiracy to keep a person from accepting or holding an office or preventing him from discharging his duties. Subsection (2) deals with a conspiracy to obstruct justice with the intent to deny equal protection of the law. Subsection (3) is directed to conspiracies to deprive persons or classes of persons of federally protected rights based on some protected class such as race, gender, or religion. *See, e.g.*, *Crosky v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-cv-400, 2012 WL 748408, at *11 (S.D. Ohio Mar. 8, 2012). Mr. Bonds appears to be asserting a claim under 42 U.S.C. § 1985(3). Mr. Snively challenges his ability to state a civil conspiracy claim, with reference to 42 U.S.C. § 1983 and also argues that intracorporate conspiracy doctrine would bar the conspiracy claims here.

To bring a civil conspiracy claim under 42 U.S.C. § 1985(3), the Plaintiffs must allege "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the

plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). Additionally, the civil conspiracy claim must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976) (explaining that a § 1985(3) claim "must be founded on a class-based invidious discrimination."). The Sixth Circuit has further expanded upon who may successfully bring a 1985(3) claim: "(1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 498 (6th Cir. 2004). The Sixth Circuit has also held that intracorporate conspiracy doctrine is applicable in civil rights suits, such that a conspiracy cannot be maintained where two or more employees of the same entity are acting within the scope of their employment when they allegedly conspired. *See Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019)

Mr. Bonds, in his complaint, contends that Defendant Snively, in concert with Parker, Heath, and Persinger-Brown worked together to "deprive him of his civil rights and his rights as [a] father." (ECF No. 4 ¶ 73). Bonds alleges that Snively denied him entry into the football game to accomplish the conspiratorial goal of denying him his rights. (*Id*. ¶ 74). Mr. Bonds further alleges that Mr. Snively was motivated by Plaintiff's race in taking the action in furtherance of the conspiracy. (*Id.*). Mr. Bonds has failed to state a civil conspiracy claim because he has not made any specific allegations of a conspiracy between Mr. Snively and Ms. Persinger-Brown, the only non-employee defendant in this matter. Mr. Snively has properly asserted the intracorporate

11

conspiracy doctrine on the basis of these facts. Therefore, this Court **SUSTAINS** Mr. Snively's objection and **DISMISSES** this claim **WITHOUT PREJUDICE**.

### D. Intentional Interference

Ohio law allows a parent to bring a civil action for intentional interference with custody in certain circumstances. Ohio Revised Code § 2919.23 prohibits a person, that knows he or she is without privilege to do so, from keeping a child under the age of eighteen from his or her parent(s). A civil action may be brought by a parent where the deprivation of custody of their minor child results from "a child stealing crime." O.R.C. § 2307.50(B). Plaintiff alleges that all of the Defendants, including Defendant Snively, have intentionally prevented Plaintiff from having custody and access to his minor son. (ECF No. 4 ¶ 76–80). Plaintiff does not specifically mention Snively's actions in this claim, but this Court construes the entire complaint liberally as Bonds is a *pro se* litigant. Assuming that Plaintiff is asserting that Mr. Snively's actions at the football game were intentional interference with Bonds' custody, then this Court will evaluate the merit of the claim on these facts. Here, Mr. Bonds has not alleged that Mr. Snively deprived Mr. Bonds of access to his son by way of a child-stealing crime, which is a pre-requisite to a civil claim for intentional interference under Ohio law. Therefore, this Court **SUSTAINS** Mr. Snively's objection and **DISMISSES** this claim **WITHOUT PREJUDICE**.

### IV. CONCLUSION

The Court hereby **ADOPTS IN PART** and **MODIFIES IN PART** the Magistrate Judge's Report and Recommendation based on the foregoing reasons. The equal protection claim may proceed against Mr. Snively. The retaliation, civil conspiracy, and intentional interference with custody claims are **DISMISSED WITHOUT PREJUDICE.** If Plaintiff seeks to amend his complaint, he must do so **WITHIN FOURTEEN DAYS** of entry of this order.

**IT IS SO ORDERED.**

  _____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  May 17, 2021**