IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD BONDS, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:20-cv-5367** |
| v. | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| BERNE UNION LOCAL | : | |
| SCHOOLS, *et al.*, | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| **Respondent.** | : | |
| | : | |

**OPINION & ORDER**

This issue is before this Court on Defendant Leah Armstrong's Motion to Dismiss (ECF No. 88). For the reasons stated below, Defendant's Motion to Dismiss (ECF No. 88) is **GRANTED** this case is hereby **DISMISSED**.

I.     BACKGROUND

A.  Factual Background

This case arises from numerous claims that Plaintiff, Todd Bonds, has filed against nine defendants with respect to matters concerning the education, child support payments, and custodial placement of his son. (ECF No. 18). As it relates to Defendant Armstrong (hereinafter "Defendant"), three distinct incidents are alleged by Plaintiff; First, Plaintiff alleges that he received a letter from Defendant in May of 2019 regarding his non-payment of his court-ordered child support. (*Id.* at 9). Plaintiff claims he called the Fairfield Jobs and Family Services Office and spoke to Defendant, a case worker, regarding the fact that he was behind on child support payments. (*Id.* at 9). He called Defendant to ask why he had to pay said child support, arguing that he should not have to because the mother of his child was a "convicted felon." (*Id.*). When Defendant suggested he pursue the appropriate avenues in court to address his complaints, Plaintiff

claims he explained that because he did not live in Fairfield County, it would be difficult for him to go through the courts to address his custody and child support payment concerns.[1] (*Id.*). Plaintiff again asked why he was not told the reason for his having to pay child support. (*Id.*). He alleges that Defendant "had no answer only to deflect and blow the responsibility on someone else at the department. She then hung up the phone in an unprofessional manner. [I] heard her mutter, 'fucking nigger.'" (*Id.*).

Plaintiff further alleges that he was arrested approximately one year later under a warrant for non-payment of child support, which was issued by Defendant. (*Id.* at 11-12). He argues that Defendant issued this warrant after Plaintiff expressed his "discontent with the effort of the county family services workers to notify him that his child was under the custody of a cocaine dealer in 2019" (*Id.* at 4-5). Notably, however, Plaintiff admits that he did not pay the requisite child support at the time of his arrest. (*Id.* at 9). Plaintiff claims that he was arrested under said warrant after being pulled over in May 2020 for driving left of center. (*Id.* at 10). He asserts that the traffic stop was the first instance that he learned of the warrant. (*Id.*). Based on his arrest and his prior conversation with Defendant, Plaintiff concludes there is a "causal connection" between the arrest and his "protective conduct [that] was deemed 'out of line' by [Defendant] … in order to 'chill' and limit [his] effect on highlighting their obvious blunder and partial behavior toward white mothers in Fairfield County over [B]lack fathers." (*Id.* at 11).

Plaintiff further alleges that Defendant "maliciously conspire[ed] in clandestine plots" with the mother of his son to continue "her skullduggery of parental alienation." (*Id.* at 4). Plaintiff further concludes that "[t]he state actors in the Job and Family services would prefer the [B]lack

---

[1] Plaintiff writes that Defendant "gave the runaround and put the phone down for about 10 minutes and came back to the phone with a very indignant tone suggesting I can call the local court and file paperwork for proceedings." (ECF No. 18 at 9).

bar

2

male Plaintiff remain a slave – or indentured servant at best – to the white mother," and that "[t]he agencies and all their employees are biased and racist." (*Id.* at 5, 10). Plaintiff goes on to allege that unnamed "state actors working for the Fairfield County Department of Jobs and Family Services child support division decided not to notify Plaintiff that mother (*sic*) was serving time at the Ohio Reformatory for Women for trafficking cocaine in Fairfield County in 2013." (ECF No. 18 at 4-5).

Plaintiff currently proceeds *pro se*, but he was previously represented. Plaintiff alleges that his pro bono counsel, Elizabeth Cooke, a professor with The Ohio State University Michael E. Moritz College of Law Civil Clinic, attempted to sabotage his case. (*Id.* at 20-21). Specifically, Attorney Cooke advised Plaintiff in a letter that the actions of Defendant, even if true, did not amount to actionable conduct. (ECF No. 18-2). The letter cautions Plaintiff that he is unlikely to succeed on his claims against Defendant and that the Child Support Enforcement Agency – not Fairfield Job and Family Services – was the agency solely responsible for collecting child support. (*Id.*). The letter specifically explains that "it appears that your communications with Defendant derailed based on your misunderstanding of the obligations and responsibilities of Defendant" and that "Defendant and other child support enforcement personnel were under no duty to inform you of [the mother's] arrest or imprisonment." (*Id.*). The letter concludes that "our opinion [is] that this lawsuit is the wrong place for criticism of Defendant for referring you to the Fairfield County Court of Common Pleas for issues related to custody or visitation." (*Id.*).

In sum, Plaintiff appears to assert express causes of action for discrimination and retaliation against Defendant, as well as an implied cause of action for conspiracy. (*Id.* at 4-33). His discrimination claim is based on the argument that Fairfield Job and Family Services and Defendant did not notify him of the conviction of his son's mother and the alleged racial slur. (*Id.*

at 21-22). Plaintiff concludes the failure to notify was "due to Plaintiff being a black male, and the [Defendant] believing in racism, negative stereotypes, worthlessness of black fathers." (*Id.*). Second, Plaintiff's retaliation claim is based on the warrant for his arrest for nonpayment of child support, which he alleges Defendant issued after their phone call. (*Id.* at 22). Again, however, Plaintiff admits that he did not pay the requisite child support. (*Id.* at 9). Third and finally, although Plaintiff does not assert an express cause of action for conspiracy, he alleges in a one-line argument that Defendant "maliciously conspire[ed] in clandestine plots" with the mother of his son to continue "her skullduggery of parental alienation." (*Id.* at 4).

### B. Procedural Background

Plaintiff initially filed his Complaint on October 16, 2020, naming nine parties, including Defendant, who was not initially served. (ECF No. 1). Eight of the parties have been dismissed, leaving only Defendant. In his Complaint and Amended Complaint, Plaintiff made his discrimination and retaliation claims against Defendant. (ECF No. 1, 18). After screening the complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), United States Magistrate Judge Deavers recommended, in relevant part, that this Court allow the action to proceed against Defendant. (ECF No. 5). On May 17, 2021, this Court adopted in part and modified in part the Magistrate Judge's Report and Recommendation on Plaintiff's initial Complaint and granted Plaintiff leave to amend. (ECF No. 8). Shortly thereafter, attorney Elizabeth Cooke filed a notice of appearance on Plaintiff's behalf. (ECF No. 10). Several months later, Ms. Cooke sought withdrawal, citing "fundamental disagreement regarding the appropriate course of legal action." (*Id.* at 6). This Court granted Ms. Cooke's Motion, and Plaintiff proceeded *pro se*. (ECF No. 17). On October 15, 2021, Plaintiff filed his Amended Complaint, asserting claims against Defendant. (ECF No. 18). Plaintiff contemporaneously sought leave to add Defendants Cooke and Hainer, which the Magistrate Judge

granted. (ECF No. 19). In the following months Defendants filed their respective dispositive motions (ECF Nos. 26, 31, 36) and Plaintiff filed several of his own (ECF Nos. 42, 43, 55). This Court disposed of those motions in its Opinion & Order dated September 21, 2022. (ECF No. 57).

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to evaluate the sufficiency of the complaint, and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Accordingly, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Although the court's primary focus should be on the allegations in the complaint, the court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And though the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion

couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### III.    LAW AND ANALYSIS

Under 28 U.S.C. § 1915(e)(2), a case can be dismissed if an action or appeal is either frivolous or fails to state a claim. A complaint is frivolous "where it lacks an arguable basis in law or in fact, including fanciful allegations." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), litigants are not relieved of the duty to develop claims with an appropriate degree of specificity. *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action ...." *Id.* The role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted). In sum, "[b]asic pleading essentials" are still required. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The court may also consider any exhibits attached to the complaint. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011). Throughout the Complaint here, Plaintiff does not provide an arguable basis in law or in fact for the presented claims. Even when taking his allegations as true, Plaintiff fails to present any factual allegations that would entitle him to relief against Defendant.

### A.  Discrimination Claim

As a threshold matter, Plaintiff does not clarify whether his discrimination claim is rooted in state law or federal law. The Supreme Court of Ohio has explained that discrimination actions under federal and state law each require the same analysis. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 421 N.E.2d 128 (1981); *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 575 N.E.2d 1164 (1991).

Further, it is unclear whether Plaintiff is bringing a discrimination claim pursuant to the Equal Protection Clause of the Fourteenth Amendment or bringing a discrimination claim pursuant to a denial of public services. Because of this ambiguity, this Court will examine both routes of recovery.

### 1. Equal Protection Clause

The Supreme Court has made clear that "[t]he central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). In other words, "[t]he Clause embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Without a viable allegation of disparate treatment, plaintiffs fail the "threshold element of an equal protection claim." *Scarbrough*, 470 F.3d 250, 260; *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." (internal quotation marks omitted)).

Additionally, "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). A plaintiff need not show that racial discrimination was the sole motivation behind complained of government conduct but must show that it was at least a "motivating factor." *Id.* at 265-66. Absent a "stark" pattern that is "unexplainable on grounds other than race," a disparate impact on a certain racial group is "not determinative" of intent. *Id.* at 266.

This Court must instead look to "such circumstantial and direct evidence of intent as may be available." *Id.*

Simply put, Plaintiff here must show that he, as a Black man, was treated differently than a non-minority person in a similar situation. *Soper v. Hoben*, 195 F.3d, 845, 852 (6th Cir. 1999). Plaintiff does not do so in this case. Plaintiff argues that Defendant muttered "fucking nigger" when she hung up the phone following their conversation about his non-payment of child support. (ECF No. 18 at 9). First, the Sixth Circuit has consistently held that one-off, single uses of racial slurs do not amount to actionable discrimination claims. *See e.g., Owens v. Johnson*, 221 F.3d 1335 (6th Cir. 2000) (holding "[t]he occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude."). More to the point, however, Plaintiff simply does not show or even allege that he was treated differently than a non-minority person in a similar situation. *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000); *see also Cunningham v. Sisk*, 136 F. App'x 771, 775 (6th Cir. 2005) ("it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted."). Without these allegations, Plaintiff's claim under the Equal Protection Clause fails.

### 2. Denial of Public Services

To establish a claim for discrimination based on a denial of public services, a plaintiff must demonstrate direct evidence of discrimination, or, alternatively, must establish *a prima facie* case of discrimination with circumstantial evidence under the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence of discrimination can be shown by presenting an instance where discrimination is evident on the face of a policy or a discriminatory motive can be assessed from a statement. *See e.g., EEOC v. Chrysler LLC*, 610 F.

8

Supp. 2d 818, 828 (E.D. Mich. 2009). Again, a single use of a racial slur is not enough to demonstrate direct evidence of discrimination. *Owens*, 221 F.3d 1335. Because the alleged slur is Plaintiff's only attempt at presenting direct evidence, the analysis turns to the *McDonnell Douglas* burden-shifting paradigm.

A plaintiff claiming discrimination has "the initial burden under the statute of establishing a *prima facie* case of discrimination." *McDonnell Douglas Corp.*, 411 U.S. at 802.  To establish a *prima facie* case, Plaintiff must show:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Here, Plaintiff has produced no direct evidence of discrimination, so the test will apply. If the plaintiff can show a *prima facie* case, the defendant then bears the burden to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff then must show "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Plaintiff fails the very first step of the *McDonnell Douglas* analysis. Plaintiff did not engage in an activity protected by Title VII. A plaintiff may satisfy the pleading requirement for protected activity by "alleging conduct" that falls within one of two clauses in the statute, which says it is an:

> unlawful employment practice for an employer to discriminate against any of his employees ... [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted,

> or participated in any manner in an investigation, proceeding, or
> hearing under this subchapter.

*Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–3(a)). Accordingly, "[t]he first clause is known as the "opposition clause," and the second as the "participation clause." *Id.* In this case, the facts do not lend themselves to an analysis of the participation clause. Plaintiff has not alleged that he was discriminated against because of his participation in an investigation or proceeding. Therefore, this Court's analysis is limited to the opposition clause.

The "Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize … ; to contend against; to confront; resist; withstand." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Additionally, "[e]xamples of opposition activity protected under Title VII include complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Id.* (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (internal quotations omitted)). The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

The plaintiff also must express his opposition in a reasonable manner. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). For example, "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). Finally, the plaintiff himself must have a

"reasonable and good faith belief that the opposed practices were unlawful." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (quoting *EEOC Compliance Manual,* (CCH) ¶ 8006); *see also Keys v. U.S. Welding, Fabricating & Mfg., Inc.,* No. CV91–0113, 1992 WL 218302, at *5 (N.D. Ohio Aug. 26, 1992) (noting that "[u]nder § 704(a) of Title VII, [the plaintiff] needed only a 'good faith belief' that the company practice about which he was complaining violated Title VII; it is irrelevant whether the allegations are ultimately determined to violate Title VII").

Here, Plaintiff engaged in no such protected activity by calling Defendant to complain about his obligation to pay child support. There was no employment relationship, nor is there a legal right not to pay child support. Indeed, a "court order to pay child support reflects a parent's legal and moral debt to the child." *United States v. Faasse*, 265 F.3d 475 (6th Cir. 2001). Further, Plaintiff admits Defendant gave him the appropriate information to seek resolution of his complaint, but he did not pursue it. (ECF No. 18 at 9-10). Because Plaintiff's activity was not protected, he necessarily fails step one of the *McDonnell Douglas* analysis and his discrimination claim will fail.

Assuming *arguendo* that Plaintiff succeeded at step one, he would fail at step four because there is no causal connection between the phone call with Defendant and his eventual arrest. Defendant, a county a case worker, simply lacks the power and authority to issue an arrest warrant. Ohio law prevents as much. *See* Oh. Crim. R. 4(A)(1). Only a judge, magistrate, clerk of court, or an officer of the court designated by the judge may issue a warrant for an arrest. *Id.* Defendant does not hold, nor is she alleged to have held, any of these positions. Even taking his allegations as true, Defendant could not have produced the warrant. Because Defendant cannot establish a *prima facie* case of discrimination, his claim fails.

11

Case: 2:20-cv-05367-ALM-EPD Doc #: 99 Filed: 07/02/24 Page: 12 of 14 PAGEID #: 885

## B. Retaliation Claim

Plaintiff's retaliation claim against Defendant similarly fails. To assert a viable retaliation claim, a plaintiff must allege: "(1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action." *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

First, Plaintiff admits that he failed to pay the requisite child support. (ECF No. 18 at 9-10). Plaintiff claims that he was arrested under a warrant after being pulled over in May 2020 for driving left of center and that the traffic stop was the first instance that he learned of the warrant. (*Id.*). This alone disqualifies him from arguing that he engaged in protected conduct because, again, there is no right not to pay child support. *Faasse*, 265 F.3d 475. Further, Plaintiff fails to demonstrate that non-Black individuals in a similar situation were treated differently by Defendant. *See supra* § III. A. 2. Nowhere in his Amended Complaint does he make even a passing mention to a similarly situated person. (ECF No. 18).

Finally, Defendant's causal connection argument again fails. He argues that Defendant issued the warrant after Plaintiff expressed his "discontent with the effort of the county family services workers to notify him that his child was under the custody of a cocaine dealer in 2019" (*Id.* at 4-5). Based on his arrest and his prior conversation with Defendant, Plaintiff concludes there is a "causal connection" between the arrest and his "protective conduct [that] was deemed 'out of line' by [Defendant] … in order to 'chill' and limit [his] effect on highlighting their obvious blunder and partial behavior toward white mothers in Fairfield County over [B]lack fathers." (*Id.* at 11). Again, however, Defendant does not have the inherent authority to sign, order, or otherwise

12

issue such a warrant. Without this authority, it would have been impossible for Defendant to issue

the warrant, defeating any causal connection that could have existed.

### C.  Conspiracy Claim

Plaintiff does not assert an express cause of action for conspiracy. In his Amended

Complaint, he alleges in a one-line argument that Defendant "maliciously conspire[ed] in

clandestine plots" with the mother of his son to continue "her skullduggery of parental alienation."

(*Id.* at 4). To the extent that this sentence constitutes a conspiracy claim by Plaintiff, this Court

will analyze it in turn.

To assert a viable conspiracy claim, a plaintiff must show that: "(1) a single plan existed,

(2) the defendant shared in the general conspiratorial objective to deprive the plaintiff of his

constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the

conspiracy that caused the injury to the plaintiff." *Crowley v. Anderson Cty., Tenn.*, 783 F. App'x

556, 560 (6th Cir. 2019). The Sixth Circuit has held that these claims must be pled with a degree

of specificity and that vague and conclusory allegations will not suffice. *Id.*

Here, Plaintiff's claim that Defendant "maliciously conspire[ed] in clandestine plots" with

the mother of his son to continue "her skullduggery of parental alienation" (*Id.* at 4) is indeed

vague and conclusory. Even at the motion to dismiss stage, Plaintiff must still plead with a degree

of specificity, as the court "need not accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555. Plaintiff does not allege that a single plan existed between

Defendant and his child's mother. (ECF No. 18 at 4-33). He does not allege that they hatched a

plan or shared in the general conspiratorial objective to deprive Plaintiff of his constitutional or

federal rights, nor does he identify any "overt act[s] committed in furtherance of the conspiracy

that caused the injury to the plaintiff." *Crowley*, 783 F. App'x at 560. In summary, Plaintiff's Amended Complaint falls short of the applicable conspiracy standard and must be dismissed.

### IV.     CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 88) is **GRANTED** this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

_____

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 2, 2024**